(The West Philadelphia Canal Company *v.* Innes.)

---

*[Philadelphia, February 10, 1838.]　　　　[*198]

## THE WEST PHILADELPHIA CANAL COMPANY *against* INNES.

### IN ERROR.

1. An act authorising the incorporation of a company to make a canal, provided that books should be opened in which subscriptions should be entered in a prescribed form, by which each subscriber promised to pay a certain sum for every share of stock, in such manner and times as should be determined by the president and managers. The certificates, or evidence of stock, were declared to be transferable at the pleasure of the holder, in the presence of an officer of the company, who was to keep a book for that purpose, subject however to all payments due or to become due thereon ; and that the assignee holding such certificate, having first caused the assignment to be entered in the books of the company, was to be a member of the corporation. It was further enacted, that if, after thirty days notice of any instalment being called for, any stockholder should neglect to pay his proportion thereof, he should pay at a certain rate per month in addition, and in a certain event the stock should be forfeited, or in default of payment by any stockholder of any instalment, the president, &c. might, at their election, cause suit to be brought to recover the same with the penalty. Under this act A. subscribed for certain shares which he transferred to B. After certain instalments had been called for, but before they were payable, B. transferred the stock to C. in the presence of the proper officer, on the books of the company. C. assented to the transfer previously to its being made, but never gave any personal notice of his acceptance of the transfer, nor called for a

VOL. III.—13

(The West Philadelphia Canal Company *v.* Innes.)

certificate. *Held,* that B. was not liable to pay any instalment which became due after its transfer.

2. Whether an original subscriber would be liable after a transfer regularly made and accepted, *dubitatur.*

THIS was a writ of error to the District Court for the City and County of Philadelphia.

The West Philadelphia Canal Company brought an action of assumpsit in that Court against Edward W. Innes, to recover certain instalments due and payable upon stock held by the defendant, in that company.

The defendant pleaded non-assumpsit and payment, &c. and the cause came on for trial before Pettit, president, on the 25th of January, 1837, when the following facts were given in evidence on the part of the plaintiffs :—

On the 4th of April, 1831, an act of assembly was passed authorising the Governor to incorporate the West Philadelphia Canal Company on certain conditions mentioned in the act.

[*199]  *On the 2d of May, 1831, a book containing the following entry, (in the form prescribed by the act,) was opened by the commissioners appointed to receive subscriptions for stock.

"We, whose names are hereunto subscribed, do promise to pay to the West Philadelphia Canal Company fifty dollars for every share of stock set opposite to our respective names, in such manner and proportions, and at such times as shall be determined by the president and managers of the said company, in pursuance of an act to authorise the Governor to incorporate a company to make a canal navigation round the western abutment of the permanent bridge over the river Schuylkill, at the city of Philadelphia. Witness our hands, this 2d day of May, A. D. 1831."

Benjamin E. Carpenter, (among others,) subscribed his name to the above entry for ten shares, and paid five dollars on each share.

On the 17th of June, 1831, letters-patent, incorporating the plaintiffs, were issued by the governor.

On the 2d of September, 1831, Benjamin E. Carpenter transferred the said ten shares to the defendant, E. W. Innes.

The balance, of forty-five dollars a share, was regularly called for, and became payable on the following days, viz.

On the 10th of June, 1833, an instalment of $10 a share.
"     1st of July,          "          10    "
"     8th of August,        "          10    "
"     20th of August,       "          10    "
"     30th of November,     "           5    "

On the part of the defendant, evidence was given showing that

(The West Philadelphia Canal Company v. Innes.)

on the 10th of May, 1833, (before any instalment was payable, though two had been called for, and advertised on the said 10th of May,) the defendant signed, in the presence of the treasurer, and on the transfer book of the company, a transfer of the ten shares to one George Johnson, in the usual form, as follows :—

"For value received, I, Edward W. Innes, do hereby assign and transfer to George Johnson ten shares in the capital stock of the West Philadelphia Canal Company, numbered        subject to the payments to become due thereon.    Witness my hand at the company's office, the 10th day of May, A. D. 1833.

EDWARD W. INNES.

In the presence of
ROBERT BETHELL, Treasurer."

And the defendant, at the same time, delivered his certificate for the ten shares to the treasurer of the company.

*One William H. Bernard, produced by the defendant [*200] as a witness, testified as follows :—

"I called with Innes, at Bethell's residence, about two weeks previous to the transfer on the 10th of May.    Mr. Innes gave Mr. Bethell notice that he wished to transfer.    Mr. Bethell said that the books were not then in his possession, but in the Bank of North America.    Mr. Bethell said he would get the books and fetch them to Mr. Innes's residence.    He did so in about two weeks from the time of notice, and brought them in, in my presence.    Mr. Innes transferred the ten shares, in my presence, with George Johnson's consent.    I heard Johnson previously consent to the transfer.    Johnson was in the employ of Serrill and Bernard at the time of the transfer, but is not now.    Johnson was a porter in our store.    He is now in the employ of Mixsell and Wilson as a porter.    I don't know what consideration was paid.    Mr. Innes was our book-keeper at the time of the transfer.    I do not recollect whether Mr. Bethell was present when Johnson gave his consent.    I don't know whether Johnson ever sent notice to the company of his acceptance of the stock."

The plaintiffs then proved that they had prepared a certificate for Johnson, which remained in their possession till the trial.

Judge Pettit charged the jury as follows :

"This case involves a pure question of law.    There is no difference or doubt as to the facts ; and I thought it would have been reduced to a case stated, in order that the question should be at once carried up to the Supreme Court, who must ultimately decide the point.    As I have no doubt upon the subject, I will not postpone my charge.

Ten shares in the West Philadelphia Canal Company's stock were subscribed by Benjamin E. Carpenter, who assigned them

(The West Philadelphia Canal Company *v.* Innes.)

to Edward W. Innes; and Innes assigned them to Johnson, in the presence of the treasurer.

The assignment was regular, and according to the charter. The consent of Johnson to the transfer to him was clearly established by William H. Bernard, a witness who was present when Johnson agreed that the assignment should be made to him. But it appears, that the assent of Johnson was never communicated to the company,—at least there was no evidence of it, and we may presume that it was not. The certificate for the ten shares was made out by the officers of the company, but never called for by Johnson, and it remains in their possession. The question is, whether Mr. Innes is liable for any instalments which became due after he transferred the stock. The first instalment was called for before he made the transfer, but it did not become due until after that time. This is a mere point of law, involving the [*201] construction of the charter, and it *cannot excite any prejudices for or against either of the parties.

There is no reason to fear, however, that a corporation will not meet with the same measure of justice that is extended to an individual. It has its rights, and can claim no favour. The same thing is true in regard to an individual. My own opinion is very clear that the defendant is not liable. The legislature have, in incorporating companies like this, acted upon the presumption, that the stocks they authorised were to be sound stocks. This is the basis of the legislative action. We cannot believe the legislature intended to give their confidence to mere empty bubbles—to mere speculations—we are not to presume it. It is then evident, with this principle in view, that the legislature looked to the forfeiture of the stock as the ultimate remedy of the corporation against delinquent stockholders. If this, with the election of the right to sue the actual holder of the stock is not sufficient to protect the company, there is no protection,— the legislature has not intended to give them any further protection. This is their ultimate remedy. Let us look at the charter.

The first, sixth and seventh sections present very clear views of the rights, duties and liabilities of the stockholders. In the first section we have the form of subscription: 'We whose names are hereunto subscribed, do promise to pay to the West Philadelphia Canal Company fifty dollars for every share of stock set opposite to our respective names, in such manner and proportions, and at such times as shall be determined by the president and managers of the said company, in pursuance of an act to authorise the governor to incorporate a company to make a canal navigation round the western abutment of the permanent bridge over the river Schuylkill at the city of Philadelphia. Witness our hands this,' &c.

(The West Philadelphia Canal Company v. Innes.)

These words by themselves are very clear; but the obligations of the original stockholders may be modified by the subsequent sections. All must be construed together. The sixth section makes it the duty of the president, &c., to procure certificates or evidences of stock for all the shares of the said company,' 'which certificate or evidence of stock shall be transferable *at his* (the stockholder's) *pleasure* in person or by attorney duly authorised, in the presence of the president or treasurer, who shall keep a book for that purpose, *subject*, however, to all payments due or to become due thereon.' The certificate is therefore transferable at *the pleasure* of the shareholder 'subject' (it is the certificate, not the individual, that is '*subject*,') 'to all payments due or to become due thereon,' and he may transfer it *at his pleasure.* Then the 'assignee holding any certificate having first caused the assignment to be entered on the books of the company,' 'shall be a member of the said corporation,' 'entitled to one share,' and to 'dividends,' and to a 'vote,' *'and be subject to [*202] to all the penalties and forfeitures, and to be sued for all balances and penalties due on such share as the original subscribers would have been.'

Thus the assignee becomes a member, and is entitled to a share—to the dividends—to a vote—he takes the place of the original subscriber, and is liable to all the responsibilities; to the penalties, forfeitures, suits, as the original subscribers '*would have been*,' not as they are, but as they *would have been*, i. e. if they had not transferred.

The 7th section provides, that if 'any stockholder shall neglect to pay any instalment,' &c. Now who is the *stockholder* here contemplated? Is it the assignor, or the assignee? Why, surely, the assignee, where one exists, for the assignor has ceased to be a stockholder, while the assignee has become one, has acquired all the rights, and assumed all the responsibilities of his assignor. It is true, we find the words 'every such stockholder or his assignee,' but the words '*or his assignee*' here seem to be mere surplusage. This is clear from the whole section, particularly the subsequent part of it. This section designates the liabilities of the shareholder. He is subject to the payment of an interest of two per cent. per month in addition to the instalment; and as an ultimate remedy against him, to a forfeiture of the stock. It is true, the company may, if they prefer it, bring suit, if the stockholder is a man of substance; but against whom may the suit be brought? why, against the stockholder, that is, against the assignee of the stock; and not a word is said of the former stockholder, but merely of the stockholder that is in default. The holding of the stock is therefore the test by which to decide who are entitled to the privileges and liable to the responsibilities

(The West Philadelphia Canal Company *v.* Innes.)

of the members of the company. Johnson assented to the assignment, and is clearly bound by his assent. He has assumed the liabilities. Whether an assignee without his consent would be bound, is not the question before us, and I need not express an opinion upon it. But here the assent has been proved, and indeed we have had no evidence of his inability to meet the liabilities. It is said he is a porter in a store, whence it is inferred he is a poor man, and unable to pay; but of this we have no proof. Some porters are substantial men: the amount here may not perhaps be greater than he could meet if called upon by suit to pay. For any evidence that we have, he may be a substantial man, and great injustice may have been done to him by some of the remarks of counsel. But the law is the same, whether he be rich or poor, a man of substance, or unable to pay. But it is said, the sixth section provides for the ' assignee holding any certificate,' and that Johnson is not such an assignee; that he does not hold the certificate; that he has never taken it up; that it remains in the possession of the company. Here let me observe, that this would be a most strict and literal construction. The [*203] company have not themselves *complied strictly with the terms of this part of the act. They make a certificate for ten shares, though the act provides, that there shall be a separate certificate for ' every share;' but, be that as it may, Johnson is the holder of the certificate, in contemplation of law, though he may not have taken it up. The company hold it for him. They are trustees for him; their holding is his holding. If the assignee is not the shareholder at the very instant of the completion of the assignment, with his assent, then there is no shareholder; the assignor is no longer so; and if the company postpone or neglect making out the certificate, the assignee would, according to this construction, have no rights in the meanwhile. He could neither vote, nor be entitled to dividends. As I view it, he holds the certificate, though it remain actually in the company's office.

The act provides, that the assignee ' having first caused the assignment to be entered in the books of the company,' shall be entitled, &c., and it is said Johnson did not cause the assignment to be entered; that it was Mr. Innes who did it. But this is of no consequence: the assignment *was entered* on the books of the company; and as Johnson assented to the transfer, the entering it at Mr. Innes's request was the act of the assignee within the meaning of the law.

The language of the act is therefore clearly with the defendant. There are but few cases to be looked to as precedents; but that in 7 Term Rep. 36, *The Huddersfield Canal Company* v. *Buckley,* is very strong. The same construction was put there

by Lord Kenyon upon a similar statute, that I put upon this. He said, that parliament intended to give their sanction to a beneficial undertaking for the public, and did not suppose it was a mere *South Sea* scheme.    There has been no decision in Pennsylvania, but this case can be carried up to the Supreme Court, who will settle the law on this important question.

As to the authority of the company to refuse to permit a transfer, I give no opinion, as the question is not now before us.

But it has been urged by the counsel for the plaintiff, that at least the defendant is answerable for the first, if for no other instalments, because it was called for, if not actually due, before the transfer took place.    But I take it, the instalment was not due from the time when it was called for, but from the day when it was made payable, and that, the transfer having been made before that day, nothing was due at the time of the transfer, and that therefore the assignor is no more liable for that, than for the subsequent instalments.

I therefore charge you, gentlemen of the jury, as this is altogether a question of law upon ascertained facts, that the law is with the defendant, and that your verdict should be for him."

The jury accordingly found for the defendant ; and the plaintiffs *having taken a bill of exceptions, removed the re-  [*204]
cord to this Court, and filed the following specifications
of errors.

"The Court erred in charging the jury,—

1. That the transfer of the ten shares of stock by the defendant to Johnson was a good and complete transfer.

2. That Johnson was such an 'assignee holding a certificate,' and 'having caused the assignment to be entered on the books of the company,' as is contemplated by the act of assembly.

3. That the said transfer discharged the defendant from his liability for the instalments which became payable on the stock subsequently thereto.

4. That the defendant was not liable for the instalments called for, before the transfer.

5. That their verdict should be for the defendant."

Mr. *R. E. Evans*, for the plaintiff in error, argued, that the defendant continued liable as holder of the stock of the company, at least until the assent of his assignee to the transfer ; and that such assent ought to be distinctly made out.    He referred to the sixth section of the act of incorporation, and cited *Hurst* v. *M'Niel*, (1 Wash. C. C. Rep. 82) ; *Jackson* v. *Phipps*, (12 Johns. Rep. 419) ; *Copeland* v. *Stephens*, (1 Barn. & Ald. 605) ; *United States* v. *Vaughan*, (3 Binn. 394) ; *Hibernia Turnpike Company* v. *Henderson*, (8 Serg. & Rawle, 221) ; *Delaware Canal Com-*

(The West Philadelphia Canal Company *v.* Innes.)

*pany* v. *Sansom,* (1 Binn. 70); Angel on Corporations, 326; Dwarris on Statutes, 641; 1 Starkie's Evid. 322.

Mr. *M'Call,* (with whom was Mr. *Brashears.*)—The evidence sufficiently proves the assent of Johnson. The facts preclude the idea of non-assent. There was no question as to his sufficiency. The assignment was made on the books of the company, without objection on their part. It would be against sound policy to impede the transfer of stock of this description, by requiring the formal assent of the assignee. In *Sargent* v. *The Franklin Insurance Company,* (8 Picker. Rep. 90,) it was held, that a by-law requiring that transfers of stock should be made only at the office of the company, personally, or by attorney, with the consent of the president, would be a restraint contrary to the general law of the commonwealth.

The opinion of the court was delivered by

KENNEDY, J.—Whether an original stockholder in the company, who became such, by having subscribed for the stock, remains [*205] *liable to pay the residue of the amount thereof, accordingly as it shall be required by the president and managers of the company, he having previously to such requisition transferred his stock, is a question which does not arise here, and therefore need not be determined. As each share of the stock, however, whether fully paid or not, is made transferable by the act under which the company were incorporated, at the pleasure of the stockholder, "subject to all payments due or to become due thereon;" and the assignee thereof is made expressly liable by the act "to be sued for all balances and penalties due on such share as the original subscriber would have been," it is perfectly clear, that there is no ground for holding such assignee liable for payments falling due after he has parted with the stock; for having parted with the stock, he is no longer a stockholder, and both the letter and spirit of the act show that it is because he is the holder of the stock, that he is made liable to be sued for arrearages due on it; and that as soon as he ceases to be the owner or holder of the stock, his liability for all payments falling due subsequently thereto ceases also. He has made no express covenant or engagement whatever to pay; it is only by force of the act that he can be made to do so, which in clear terms extends no farther than during the time that he shall continue to hold the stock. And though there may be some plausibility or force in arguing, that the original stockholder, notwithstanding he has assigned his stock, still remains liable "to pay in such manner and proportions, and at such times as shall be determined by the president and managers of said company,"

(The West Philadelphia Canal Company *v.* Innes.)

because such are the terms of his written agreement, yet it is perfectly manifest, that no such pretence exists for making the assignee liable.

But it is alleged that it was not shown on the trial that the defendant had assigned the stock, so as to cease to be the holder of it: that although he gave evidence of a transfer made, apparently regular enough as to form, yet he failed to show that it had ever been accepted of by George Johnson, to whom it appeared, from the book of the company to have been made: and therefore, without an acceptance by the latter, the company could not hold him liable; consequently, the defendant must still be held bound to pay until he can show that his liability has been shifted and thrown upon the shoulders of some other. The Court below as it is alleged, erred as to this point, in submitting the cause to the jury as if an acceptance of the assignment by Johnson had been clearly proven, and thus rendered perfect.

If the state of the evidence were as the counsel for the plaintiff seems to think it was, it would have been error in the Court to have treated the cause, in their direction to the jury, as if fact of the assignment had been clearly established by the evidence. In order to show that a perfect assignment of the stock had been made by the *defendant, it was certainly necessary to prove either an express acceptance of it by [*206] the party named therein, as the assignee, or otherwise show something equivalent to it, which rendered a formal acceptance unnecessary. This latter we think was fully shown by the evidence of William H. Bernard, who not only testified that he saw the assignment made by the defendant in the proper book of the company, kept for that purpose, in the presence of Robert Bethell, the treasurer of the company, as required by the incorporation act of the company, but that he heard Johnson previously consent to the transfer. The truth of this evidence is not controverted; but it is contended that although true, it does not amount to an acceptance. We, however, do not consider that any subsequent formal acceptance by Johnson, was requisite in such case, in order to make him liable as a stockholder, more than it would have been, to have made him liable to pay for goods, which he had previously agreed to buy from the defendant, and had directed the defendant to deliver at a particular place within a limited time for him, which the defendant had accordingly done; the assignment being made in pursuance of a previous agreement of the parties, and, therefore, as it must be considered in its legal effect, at the request of Johnson, no formal acceptance such as has been contended for by the plaintiff's counsel, was afterwards neces-

(The West Philadelphia Canal Company *v.* Innes.)

sary.   The defendant having then, according to the evidence, assigned the stock to Johnson at the special instance and request of the latter, made it in a manner sufficient not only to render him liable to pay the defendant whatever he agreed to pay as the price of it, but likewise to pay to the company as the owner thereof, all payments that should become subsequently due upon it.

It has, however, been said the company were without evidence of the agreement between' the defendant and Johnson, in regard to assigning the stock, and therefore, were justified in treating the defendant still as the holder of it, until Johnson called for the certificate that was . made out for him.   If that were to be regarded as the only evidence that could be given of acceptance, it would be putting it in the power of the purchaser, at his pleasure, by refusing to take the certificate after it was made out for him, not only to defeat to a certain extent, but also to defraud the seller, who in pursuance of, and upon the faith of the agreement for the sale, had transferred the stock in the usual form.   Because, according to the principle contended for here by the plaintiff, the assignor would still be liable to all the charges, but by a voluntary act of his own, having transferred on the books of the company all his right to the stock, would be precluded from receiving any profit which might otherwise have been derived therefrom.

But why should it be said that the company were without knowledge of the evidence, by which the agreement between the [*207] defendant *and Johnson for the transfer of the stock would be established?   The transfer was made on the books of the company, not only with their knowledge, but assent and permission.   Before they permitted the assignment thus to be entered in their books, they had it in their power to inquire into the truth of the agreement, between the defendant and Johnson, under which it was proved on the trial the assignment was made; and if the company deemed it proper and necessary to be advised as to this, it is but right to presume, since they permitted the assignment to be made on their book, in the presence of their cashier, who attested it as a subscribing witness, that they were satisfied with it, and had no objection to it on account of its not being in conformity to a previous agreement between the defendant and Johnson.   The act under which the company have been incorporated, requires that the transfer of stock shall be made in the presence of the president or treasurer, and entered on the . book of the company, to be kept by them for that purpose; and the very object requiring all this was, as I take it, that the company might from time to time, and at all times, know who the stockholders were, and deal with them as such.   If this view be

correct, and I am inclined to think it is, then the book of the company which contained the assignment, and was produced by them, was at least *prima facie* evidence as against them of a genuine and perfect assignment.—The judgment is affirmed.

Judgment affirmed.

Cited by Counsel, 5 Wharton, 251; 11 Harris, 46; 4 Casey, 350; 7 Id. 492.
Cited by the Court below, 5 Casey, 149.
Cited by the Court, 2 Harris, 306.
See also 10 Casey, 289; 2 Wright, 92.